FILED
2015 Jun-09  PM 03:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIAM J. SARGENT AND CANDACE K SARGENT,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No.:** |
| **v.** | ) | |
| | ) | |
| **MGC MORTGAGE, INC, a corporation;** | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COME NOW** Plaintiffs William J. Sargent and Candace K. Sargent (hereinafter "Plaintiffs") by and through their attorneys of record and file their Complaint against Defendant and state as follows:

## JURISDICTION AND VENUE

1.  This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"), the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), and out of state law violations and out of the invasions of Plaintiffs' personal and financial privacy by the Defendant and its agents in their illegal efforts to collect a consumer debt from Plaintiffs.

## PARTIES

2.   Plaintiffs William J. Sargent and Candace K. Sargent are residents of this Judicial District, and are over the age of 19.

3.   Defendant MGC Mortgage, Inc. ("Defendant" or "MGC") in this action is a foreign corporation doing business in this Judicial District, and is considered a debt collector under the FDCPA as it was assigned the debt at issue when the debt was allegedly in default.  It is also a "servicer" under RESPA.  It conducts business in Alabama.  Its principal place of business is in the State of Texas and it is incorporated in Texas.

## BACKGROUND INFORMATION ON

## MORTGAGE SERVICING CASES

4.   In recent years many of the abusive and illegal practices of mortgage companies have come to light, including the rampant "robo signing" and "dual tracking," all of which led to government action against servicers and the amendments on Regulation X (RESPA) effective January 2014.

5.   In January 2013, the Consumer Financial Protection Bureau issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

2

Case 2:15-cv-00959-LSC   Document 1   Filed 06/08/15   Page 3 of 22

6.     Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z)(February 14, 2013) and 78 FR 10695 (Regulation X)(February 14, 2013). These Regulations became effective on January 10, 2014.

7.     The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of the said Regulations.

8.     The Defendant in this case is subject to the Regulations and does not qualify for any of the exceptions noted in the Regulations.

9.     The Plaintiffs are asserting a claim for relief against the Defendant for breach of the specific Rules under Regulation X as set forth below.  The Plaintiffs have a private right of action under the Real Estate Settlement Procedures Act, 12 USC 2605(f) for these breaches and such an action includes actual damages, costs, statutory damages and attorneys fees.

10.    While the mortgage companies have been vehement in their attacks on the CFPB and Regulation X, which overhauled the loss mitigation process and provided for "Notices of Errors" and "Requests For Information," as replacements for the old "Qualified Written Requests," the mortgage

industry (including Defendant MGC) knows what the requirements are of this law.

11.   The surprising fact is how often mortgage companies like Defendant MGC are willing to violate RESPA and the FDCPA along with state law.

12.   This case is a perfect example of what is happening across the country and this state.

## STATEMENT OF FACTS

13.   Plaintiffs had a consumer debt in the form of a residential loan which after I allegedly went into default, Defendant MGC began servicing and collecting on the loan[1].

14.   Defendant MGC is collected on, threatened to foreclose on, and did in fact foreclose on Plaintiffs' property on July 10, 2014.

15.   All actions of Defendant MGC are illegal.

16.   Plaintiffs invoked the loss mitigation procedures in a timely manner allowed for by RESPA but Defendant MGC refused to allow Plaintiffs to exercise their rights to loss mitigation to avoid the foreclosure.

17.   For example, Plaintiffs made a valid oral request for loss mitigation on several occasions including May 29, 2014.

---

[1] The documents refer only to Plaintiff William but the collection efforts and foreclosure threat have been against both Plaintiffs and Defendant MGC has asserted that both Plaintiffs have responsibility for this alleged debt.

18.   Defendant MGC refused to accept the oral request and told Plaintiffs a loss mitigation package would have to be completed.

19.   But Defendant MGC refused to email the package to Plaintiffs.

20.   Defendant MGC refused to allow Plaintiffs to access the package through a website.

21.   Instead Defendant MGC said it would mail the package and it would take between 7-10 business days to reach Plaintiffs.

22.   Defendant MGC also stated that Defendant MGC must have the package returned to it at least 39 days before the foreclosure date of July 10, 2014.

23.   This is not a true statement of the law and was designed to deceive the Plaintiffs.

24.   But even accepting the "39 day statement" by Defendant MGC, 39 days before July 10, 2014, is June 1, 2014.

25.   Defendant MGC purposely rigged the game so Plaintiffs could not complete the package by the 39-day deadline.

26.   This violates RESPA and constitutes illegal "dual tracking" which is where a mortgage servicer (such as Defendant MGC) proceeds with foreclosure when a consumer requests loss mitigation.

27.   Defendant MGC also broke into Plaintiffs' home and damaged the home and personal items in the home.

28.   As letters and phone calls would not stop MGC from breaking the law, Plaintiffs even sent over ten separate letters to Defendant MGC under the "Request for Information" and "Notice of Error" provisions of RESPA in Regulation X that came into effect January 2014.

29.   These letters were received, by certified mail, by Defendant MGC on June 2, 2014.

30.   The Plaintiffs incurred actual expenses, costs and damages including, but not limited to, the postage costs of mailing the letters, gas money, mileage money travelling to the post office, and other costs and expenses and damages that will be identified in discovery.

31.   These letters were mailed to the address specified by Defendant MGC to receive Request for Information and Notice of Error letters.

32.   Defendant MGC failed on all the letters to acknowledge receipt of them within five business days as required by RESPA.

33.   Defendant MGC failed to substantively respond within thirty business days of receiving the letters.

34.   Thirty business days from June 2, 2014, is July 14, 2014.

35.   Defendant MGC mailed its "responses" (which were not complete) after the 30-business day deadline – the letters were mailed on July 17, 2014.

36.  Because Plaintiffs received no responses, Plaintiffs sent over twenty letters[2] under the request for information and notice of error tools, which were received by Defendant MGC at the designated address on July 18, 2014.

37.  Defendant MGC had to acknowledge receipt by July 25, 2014, but did not mail acknowledgement until July 29, 2014, and Defendant MGC was required to substantively respond by August 29, 2014, but did not mail responses (which were lacking in substance) until September 11, 2014.

38.  Defendant MGC has a pattern and practice of failing to properly respond to Request for Information and Notice of Error letters from consumers such as the Plaintiffs.

39.  This allegation is supported by other suits and/or complaints against MGC and by the repeated refusal by Defendant MGC to timely and properly respond to the over thirty (30) letters sent to it by Plaintiffs.

40.  This is not an oversight or a mistake on the part of Defendant MGC but instead is a deliberate and calculated plan in an effort to thwart the protections offered to consumers such as Plaintiffs when dealing with an alleged mortgage loan.

---

[2] The Plaintiffs incurred actual expenses, costs and damages including, but not limited to, the postage costs of mailing the letters, gas money, mileage money travelling to the post office, and other costs and expenses and damages that will be identified in discovery.

41.   Defendant MGC believes that very few, if any, consumers will take action based upon its refusal to properly and timely respond to letters sent to it pursuant to Regulation X under RESPA and to Defendant MGC's other violations of RESPA set forth above.

42.   Plaintiffs have repeatedly told Defendant MGC (verbally and in writing) that it has violated the law and should not foreclose but this has not discouraged Defendant MGC from seeking to collect money it is not entitled to collect and has not discouraged Defendant MGC from foreclosing illegally upon Plaintiffs.

43.   The actions and inactions of Defendant MGC violate the FDCPA, RESPA, and state law.

44.   Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors. 15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**.

(b)   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)   **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts**.

(d)   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are

purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)     It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged,** and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

45.     Plaintiffs incurred a financial obligation that was primarily for personal, family or household purposes (Plaintiffs' home loan) and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

46.     Plaintiffs allege the debt was in default at the time the servicing rights were allegedly assigned or transferred to Defendant MGC.

47.     Defendant MGC is considered a "debt collector" and began engaging in debt collection activities against Plaintiffs.

48.     Defendant MGC has refused to give required disclosures to Plaintiffs as required under the FDCPA.

49.     Misrepresentations were made regarding the character, amount, or legal status of the debt.

50.     The amount of the debt, the amount of fees and charges, were incorrect and not supported by the law and by the note and mortgage.

51. The threatened foreclosure and other collection activities are illegal and constitute a threat to take action that Defendant MGC was not legally entitled to take.

52. The actual foreclosure itself was illegal and not authorized by the mortgage and note that require that the law be followed and RESPA prohibited the foreclosure after Plaintiffs made a timely loss mitigation application.

53. Defendant MGC used false representations and/or deceptive means to collect on this debt.

54. The collection methods employed by Defendant MGC were harassing and illegal.

55. The shock, dismay, fear, anger, embarrassment, humiliation, sense of betrayal, and outrage felt and experienced in the Plaintiffs' bodies, minds, and hearts, is difficult to describe as Defendant MGC has foreclosed and refused to provide requested information and has refused to correct its errors, including the foreclosure and the refusal to provide loss mitigation.

56. Plaintiffs allege that the alleged assignments between the original lender, and any other entity are defective, void, or otherwise unenforceable.

57. Plaintiffs contend that any alleged transfer was wrongful, illegal, in violation of law and the documents governing the relationship between Plaintiffs and the owners of their mortgage.

58.   As a direct result of the acts complained of, Plaintiffs have been caused to suffer, and will continue to suffer great mental anguish, damage to their reputation, economic and emotional damages and claim from Plaintiff all damages allowable under the law.

59.   All employees and agents of Defendant MGC acted within the line and scope of their employment and/or agency relationship with Defendant MGC.

## COUNT I.

## VIOLATIONS OF RESPA

60.   Defendant failed to confirm or otherwise acknowledge receipt of many of the Request for Information and Notice of Error letters within the time period required by the law.

61.   RESPA requires the Defendant MGC to send the Plaintiffs a written acknowledgement saying that the Defendant MGC received the Request for Information from the Plaintiffs.

62.   The written acknowledgement had to be provided to the Plaintiffs within five (5) business days of the date of the receipt of the Request.   The Regulations provide that in computing this time period public holidays, Saturdays and Sundays are excluded.

63.   Defendant MGC failed to follow this law.

64.   Substantive responses are required to be sent to Plaintiffs by Defendant MGC within thirty (30) business days of receipt of the notices of error and requests for information.   The Defendant MGC has not provided the Plaintiffs with a substantive response to the letters sent to it in a timely fashion.

65.   For example, Plaintiff sent over ten letters that were received by Defendant MGC on June 2, 2014.

66.   Acknowledgement was required by June 9, 2014, but Defendant MGC refused to do so.

67.   Substantive responses were due by July 14, 2014, but were not mailed before then by Defendant MGC.

68.   Over twenty letters were sent by Plaintiffs to Defendant MGC and received by Defendant MGC on July 18, 2014.

69.   Acknowledgement was required by July 25, 2014.

70.   Defendant MGC did not mail acknowledgement until July 29, 2014, after the required deadline.

71.   Substantive responses were due for the letters received on July 18, 2014, by August 29, 2014, but the almost all of the responses (which were not substantive) were not mailed until well after the August 29, 2014, deadline on September 11, 2014.

72.    Defendant MGC also violated the prohibition on "dual tracking" by refusing to stop the foreclosure procedure after Plaintiffs requested loss mitigation in a timely manner.

73.    Defendant MGC refused to accept the Plaintiffs' loss mitigation package, refused to acknowledge it, refused to stop the foreclosure upon receipt of a loss mitigation request, refused to evaluate the loss mitigation request, refused to tell Plaintiffs' what (if any) information was missing from the loss mitigation package/request, and failed to give time for Plaintiffs' to challenge or appeal the denial of the loss mitigation request, all of which are violations of RESPA.

74.    The Defendant in this case has exhibited a pattern and practice of failing to comply with the Regulations as, for example, it failed to comply with multiple letters from Plaintiffs, repeatedly failed to follow the loss mitigation rules, and, on information and belief, has been sued or otherwise has had complaints against it for failing to respond to other similar requests under Regulation X, including qualified written requests[3].

75.    As a result of this lack of compliance by the Defendant, Defendant is liable to Plaintiffs for actual damages, statutory damages for each violation, costs and attorneys fees.

---

[3] Qualified Written Requests still exist but for practical purposes have been replaced with requests for information and notices of errors.

76.   The violations of the law by Defendant MGC set forth in this count and in paragraphs 3-42, 51-52, 55, and 58-59 of the Complaint have resulted in mental anguish, emotional distress, financial loss, damage to credit, and other damages that will be identified in discovery

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692d

77.   Section 1692d states "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

78.   Specifically, paragraphs 3-59 support the 1692d claim.

79.   As a result of Defendant MGC's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant MGC.

## COUNT III.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(11)

80.   Section 1692e(11) requires a debt collector to alert in all communications that it is a debt collector attempting to collect a debt.

81.   Specifically, paragraphs 3 and 48 support the 1692e(10) claim.

82.    As a result of Defendant MGC's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant MGC.

## COUNT IV.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f

83.    Section 1692f states "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

84.    Specifically, paragraphs 3-59 support the 1692f claim.

85.    As a result of Defendant MGC's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant MGC.

## COUNT V.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692f(6)

86.    Section 1692f(6) prohibits threats to take property if not allowed by the security agreement and the law.

87.    Specifically, paragraphs 3-59 support the 1692f(6) claim.

88.    As a result of Defendant MGC's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant MGC.

## COUNT VI.

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

89.   Defendant MGC's collectors are allowed and encouraged to break the law in order to collect debts.

90.   Specifically, paragraphs 3-59 support this claim.

91.   Defendant MGC is aware of the wrongful conduct of its collectors.

92.   Defendant MGC negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent employees and/or agents, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant MGC is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT VII.

## WANTON CONDUCT

93.   Defendant MGC had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

94.   Defendant MGC had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

95.   Defendant MGC acted with wanton conduct in its dealings with and about Plaintiff as set forth in this Complaint at paragraphs 3-59.

96.  Defendant MGC violated all of the duties Defendant MGC had and such violations were made wantonly.

97.  It was foreseeable, and Defendant MGC did in fact foresee it, the actions of Defendant MGC would lead and did lead to the exact type of harm suffered by Plaintiff.

## COUNT VIII.

## INVASION OF PRIVACY

98.  Alabama law recognizes Plaintiffs' right to be free from invasions of privacy and Defendant MGC violated Alabama state law as described in this Complaint.

99.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

100.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions"

including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

101. Defendant MGC and/or its agents intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiffs' privacy.

102. Defendant MGC and its agents intentionally, recklessly, and/or negligently caused emotional harm to Plaintiffs by engaging in highly offensive conduct in the course of collecting this debt including taking Plaintiffs' property, thereby invading and intruding upon Plaintiffs' right to privacy.

103. The plan and scheme carried out by Defendant MGC exceeded the bounds of reasonableness that govern the collection of debts, as there was no right to foreclose.

104. Plaintiffs had a reasonable expectation of privacy in Plaintiffs' solitude, seclusion, private concerns or affairs, and private financial information.

105.   The conduct of Defendant MGC and its agents, in engaging in the above-described illegal collection conduct (including paragraphs 3-59) against Plaintiffs, resulted in multiple intrusions and invasions of privacy by the Defendant MGC which occurred in a way that would be highly offensive to a reasonable person in that position.

106.   As a result of such intrusions and invasions of privacy, Plaintiffs are entitled to actual damages in an amount to be determined at trial from Defendant MGC.

107.   All acts of Defendant MGC and its agents and/or employees were committed with malice, intent, wantonness, and/or recklessness and as such Defendant MGC is subject to punitive damages.

## COUNT IX.

## TRESSPASS TO REAL PROPERTY

108.   Defendant MGC entered Plaintiffs' property and damaged Plaintiffs' property including changing the locks.

109.   Defendant MGC did not have permission to enter Plaintiffs' property.

110.   Defendant MGC did not have permission to enter Plaintiffs' and to damage the property or change the locks.

111.   Defendant MGC's actions have damaged Plaintiffs and Plaintiffs are entitled to compensatory, nominal and punitive damages against Defendant MGC.

## COUNT X.

## TRESPASS TO CHATTEL AND/OR CONVERSION

112.  Defendant MGC entered Plaintiffs' property and damaged Plaintiffs' personal property.

113.  Defendant MGC did not have permission to exercise dominion and control over Plaintiffs' personal property.

114.  These actions constitute trespass to chattel and/or conversion.

115.  Defendant MGC's actions have damaged Plaintiffs and Plaintiffs are entitled to compensatory, nominal and punitive damages against Defendant MGC.

## **RELIEF REQUESTED**

**WHEREFORE,** Plaintiff having set forth their claims for relief against the Defendant MGC, respectfully pray of the Court as follows:

a.  That Plaintiffs have and recover against the Defendant MGC a sum to be determined by a jury of their peers in the form of actual/compensatory damages;

b.  That Plaintiffs have and recover against the Defendant MGC a sum to be determined by a jury of their peers in the form of nominal damages;

c.   That Plaintiffs have and recover against the Defendant MGC a sum to be determined by a jury of their peers in the form of punitive damages;

d.   That Plaintiffs have and recover against the Defendant MGC a sum to be determined by a jury of their peers in the form of statutory damages;

e.   That Defendant MGC be enjoined from further violations of the law against Plaintiffs;

f.   That Plaintiffs have reasonable attorney's fees, costs, expenses; and

g.   That Plaintiffs have such other and further and proper relief as the Court may deem just and proper.

Respectfully Submitted,

John G. Watts (ASB-5819-t82j)
M. Stan Herring (ASB-1074-n72m)
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiffs**

**PLAINTIFFS DEMAND A TRIAL BY JURY IN THIS CAUSE.**

**Attorney for Plaintiffs**

**Please serve Defendant by certified mail at the following address:**

MGC Mortgage, Inc.
c/o CT Corporation System
818 W. Seventh Street
Suite 930
Los Angeles, CA 90017